UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL R.,[1]<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 2:19-cv-08689-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

　　Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

　　In October 2015, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability since May 23, 2015.

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

(Administrative Record ["AR"] 380-391.) Plaintiff's applications were denied initially and upon reconsideration. (AR 250-258, 261-267.) A hearing took place on October 5, 2018 before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 111-144.)

In a decision dated October 26, 2018, the ALJ found that Plaintiff suffered from the following severe impairments: bilateral status post-boxer's fracture; status post-right ankle gunshot wound and open reduction and internal fixation with residual arthritis; obesity; left ankle degenerative arthritis; left hand 4th finger mallet deformity; malunion of 5th left and 4th right fingers; right hand/wrist ganglion cysts; back arthralgias; and depressive and anxiety disorders. (AR 78.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work with the following restrictions: needing a cane to walk more than four blocks; standing/walking no more than four hours in an eight-hour workday; occasionally walking on uneven terrain; no climbing ladders or working at unprotected heights; occasional postural activities; frequent handling and fingering and reaching bilaterally; performance of simple and routine tasks; no more than incidental contact with the public and co-workers; and no more than occasional contact with supervisors. (AR 82.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 86-87.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

Plaintiff, who is proceeding *pro se*, has not presented any disputed issue with specificity. In his brief supporting his complaint, Plaintiff alleges that he is "still going to physical therapy" and "still dealing with major pain in both hands due to the breakage of the bones." He also states that the screws in his ankle make it "hard for

me to stand and walk to keep my balance" and that his conditions affect his ability to perform "normal daily tasks," which "can be very depressing." (ECF No. 23 at 4-5.) Finally, Plaintiff states that his mental health physician, Dr. Kopp, "has been helping me with my issues." (ECF No. 23 at 5.)

Generally, the Court need not consider claims that Plaintiff fails to present with any specificity and that lack citation to evidence or legal authority. *See*, *e.g.*, *DeBerry v. Comm'r of Soc. Sec. Admin.*, 352 F. App'x 173, 176 (9th Cir. 2009) (declining to consider claim that ALJ failed properly to apply Social Security Ruling where claimant did not argue the issue "with any specificity" in her opening brief and failed to cite "any evidence or legal authority" in support of her position); *Nazarian v. Berryhill*, 2018 WL 2938581, at *4 (C.D. Cal. June 7, 2018) (finding plaintiff "provide[d] no specific argument regarding how the ALJ in this case specifically erred in such respect, and thus fail[ed] to persuade the Court that a remand is warranted on such conclusory grounds"). Nevertheless, the Court has liberally construed Plaintiff's memorandum in support of the complaint to raise the issues discussed below.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Under the substantial-evidence standard, this Court asks whether the administrative record contains sufficient evidence to support the Commissioner's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). As the Supreme Court stated in *Biestek*, "whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high." *Id*. It means "more than a mere scintilla" but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

389, 401 (1971). This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I. Medical Record

The ALJ summarized the relevant medical record. With regard to Plaintiff's physical impairments, the ALJ began by discussing Plaintiff's history of bilateral status post-boxer's fracture and status post-right ankle gunshot wound and open reduction and internal fixation. (AR 78, citing AR 508-512.) The ALJ noted that updated x-rays from June 2015 showed signs of old injuries but no acute fracture or significant arthritis. (AR 617-620.) In July 2015, Plaintiff was prescribed ibuprofen and Naproxen for relief of pain related to these "old injuries." (AR 620-622.)

In January 2016, Plaintiff presented to the emergency room complaining of residual pain related to his hand and ankle injuries. Plaintiff was found to have a cyst on his right and some claw deformity but showed no tenderness. Plaintiff had some diminished range of motion in his left ankle due to pain. No other physical deficits were noted. Plaintiff was discharged with a prescription for pain medication (Norco). (AR 686-691.)

In February 2016, Plaintiff was treated at South Bay Family Health Care for complaints of chronic pain in left ankle and hands based upon his prior injuries. He was diagnosed with osteoarthritis of his hands and left ankle and advised to continue using pain medication. (AR 705-707.) The ALJ noted that Plaintiff made intermittent reports of similar pain throughout 2016. (AR 709-724.)

In March 2016, Plaintiff underwent an orthopedic consultation with Samer Alnajjar, M.D., at the California Orthopedic Institute. Dr. Alnajjar diagnosed Plaintiff with right wrist ganglion cyst and a left mallet finger. His mallet finger was

treated with a splint and hand therapy. Plaintiff underwent surgical ganglion removal in July 2016, followed by occupational therapy. (AR 727-755.)

The ALJ noted x-rays of Plaintiff's left ankle taken in September 2016 and June 2018 revealed severe degenerative arthritis. (AR 1111, 1350.)

In January and April 2017, Plaintiff presented to the emergency room complaining about the return of his right wrist ganglion cyst with mild tingling in his fingers. The fluid was removed from the joint capsule without complication, and Plaintiff was discharged. (AR 775-788, 789-798.) In September 2017, Dr. Alnajjar performed a surgical excision of Plaintiff's right wrist ganglion cyst. (AR 894.) Thereafter, Plaintiff continued to participate in physical therapy. (AR 1120-1177, 1471-1552.)

Warren Yu, M.D., performed a consultative orthopedic evaluation of Plaintiff in January 2018. Plaintiff reported residual bilateral wrist and left ankle pain. He denied back pain. Examination revealed normal range of motion in back, neck and extremities. Straight-leg raising was negative bilaterally in both the supine and seated position. Plaintiff exhibited residual tenderness on palpation over the right wrist, but range of motion was full and painless in all planes; there was no swelling or effusion; and Tinel's sign over the carpal tunnel, cubital tunnel, radial tunnel, and Guyon's tunnel were negative. Plaintiff showed pain in the fourth and fifth metacarpals of his left hand and the fourth metacarpal of his right hand, but there was no atrophy or tenderness. Plaintiff had no loss of fine or gross manipulative functioning and range of motion of the fingers was full and painless. Plaintiff also showed some left ankle tenderness and reduced ranges of motion, but retained normal neurological functioning. Dr. Yu diagnosed Plaintiff with mild posttraumatic arthritis of the left ankle; malunion of the fifth metacarpal on the left hand and fourth metacarpal on the right hand; mallet finger of the fourth digit on the left hand; and myofascial low back pain. In Dr. Yu's opinion, Plaintiff retained the ability to lift/carry 10-20 pounds; stand/walk for four hours in an eight-hour workday; sit for six hours in an eight-hour

workday; perform occasional postural movements; and frequent manipulative tasks. (AR 762- 772.)

Throughout 2018, Plaintiff continued to complain of left ankle arthralgias. (AR 1558, 1564-1565, 1568-1572, 1581-1583.)

In treatment notes from July 2018, Dr. Alnajjar observed that Plaintiff had developed a new right wrist cyst near his previously treated lesion. The cyst limited full extension and flexion of the wrist and Tinel's test as positive with percussion over the main and radial nerve. Dr. Alnajjar recommended another procedure to aspirate the new cyst and the use of a short-arm splint until Plaintiff could be scheduled for surgery to excise the cyst. (AR 1600-1601.)

With regard to Plaintiff's mental impairments, the ALJ noted that he was treated at Gateway Homeless Services between 2014 and 2017. At his initial assessment in September 2014, Plaintiff reported a history of depression with paranoia, insomnia, low energy, anxiety, and hallucinations but had not previously sought formal mental health treatment. Plaintiff indicated he self-medicated with marijuana and alcohol. He was diagnosed with major depressive disorder with psychotic features and alcohol and cannabis abuse. (AR 514-515, 518-530.) Plaintiff's treating psychiatrist, Arthur Kopp, M.D, prescribed Remeron, an anti-depressant medication. (AR 518, 525-526.)

Every one or two months from 2015 through 2017, Plaintiff continued follow-up outpatient therapy treatment with Dr. Kopp. (AR 803-886.) Treatment notes from November 2014, January 2015, and February 2015 all reflect that Plaintiff was compliant with his medication and denied side effects. Mental status examination revealed a sad mood and blunted affect. Plaintiff's thought process was well organized, his speech was normal, his personal hygiene was good, he denied audio or visual hallucinations and denied suicide ideation. (AR 594, 596, 599.)

Notes from a March 2015 follow-up revealed Plaintiff to be alert, cooperative, and clean. No abnormal movements were observed. Plaintiff's speech was normal;

his mood was euthymic; his memory, attention, and concentration were intact. His thought process exhibited no delusions and his cognitive functions appeared to be grossly intact. Plaintiff reported that he was doing "much better" and his mood was not as irritable as before. He denied suicidal ideation, auditory or visual hallucinations. Dr. Kopp continued Plaintiff's medication. (AR 611-613.)

Dr. Kopp next saw Plaintiff in June 2015. Plaintiff had missed several appointments and presented with exacerbation of depressed mood and irritability. As a result of missed appointments, Plaintiff's medication compliance was noted to be poor. Nevertheless, other than dysphoric mood and blunted affect, Plaintiff's mental status examination was essentially normal. (AR 806-807.) Later that month, Plaintiff reported paranoia. Mental status examination revealed Plaintiff's speech was low and slow; his mood was dysphoric; his affect was blunted; his attention and concentration were impaired; his thought content exhibited paranoid - persecutory delusions; and his insight and judgment were poor. Dr. Kopp prescribed Seroquel. (AR 809-811.) In July 2015, Plaintiff complained of depression, and Dr. Kopp increased the dosage of Plaintiff's anti-depressant medication. (AR 812-814.) In August 2015, Dr. Kopp noted that Plaintiff was alert, cooperative, and clean. He did not exhibit abnormal movements; he was oriented; his memory, attention, and concentration were intact; he denied suicidal ideation and hallucinations; and his through content did not exhibit delusions. However, Plaintiff's mood was dysphoric; his affect was blunted; his speech rate, tone, and volume were abnormal; and Dr. Kopp noted that Plaintiff's cognitive functions "appeared to be impaired." (AR 815-816.) By September 2015, Plaintiff reported medication compliance with no side effects. His mental status examination returned to essentially normal but for dysphoric mood and blunted affect. Notably, Plaintiff's speech was normal; he was alert and oriented; his memory, attention, and concentration were intact; and his cognitive functions were grossly intact. (AR 818-819.)

In an April 2016 Mental Disorder Questionnaire Form, Dr. Kopp diagnosed Plaintiff with major depressive episode, and noted that Plaintiff had no deficits of behavior, memory, or intelligence. Dr. Kopp also indicated that Plaintiff was able to independently perform daily living activities and public transportation. However, he noted that Plaintiff had poor judgment and was generally paranoid, fearful and delusional. In Dr. Kopp's opinion, Plaintiff was able to follow simple instructions, but had problems accepting direction or supervision. (AR 700-704.) In December 2016, Dr. Kopp completed a form entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)." At that time, Dr. Kopp assessed Plaintiff's ability to perform all but two work-related activities as either "seriously limited" or "unable to meet competitive standards." (AR 756-757.)

In February 2016, Plaintiff underwent a consultative psychiatric evaluation conducted by Larisa Levin, M.D. Plaintiff complained of depression, mood swings, low motivation, and ongoing marijuana and alcohol use. He indicated that he received outpatient therapy and took medications including Remeron and Seroquel. He stated that he was "doing fairly stable on his medications," experienced "fewer mood swings," "sleeps and eats well," has no perceptual disturbances, suicidal or homicidal ideations. Plaintiff denied problems caring for his personal needs, performing household chores or daily activities, getting along with others, maintaining attention, or completing household tasks. Plaintiff's mental status examination revealed him to be appropriately dressed and groomed; cooperative; oriented; with intact memory, concentration, judgment, and cognitive functioning. Plaintiff's mood was dysphoric and showed no signs of psychosis. Dr. Levin diagnosed Plaintiff with mood disorder, not otherwise specified and cannabis and alcohol abuse. She opined that Plaintiff's mental impairments resulted in no work-related mental functional deficits. (AR 692-697.)

The ALJ noted that in January 2017, Dr. Kopp found Plaintiff was calm and cooperative. Plaintiff reported good medication compliance and no side effects.

Other than a dysphoric mood and blunted affect, Plaintiff's mental status examination was normal. (AR 80, citing AR 861-862.) The ALJ observed that "[l]ittle change was noted during 2017, and as of a December 2017 visit to Dr. Kopp, [Plaintiff] again generally performed well upon mental status testing, but for a dysphoric mood." (AR 80, citing AR 761.)

In March 2016, a State agency medical evaluator reviewed the medical record and found that there had been no material change since the prior ALJ's unfavorable determination. The physician opined that Plaintiff suffered from a medically severe impairment of osteoarthrosis and allied disorders, but that his mental impairment was not severe. In the State agency physician's opinion, Plaintiff could lift/carry 25-50 pounds; sit/stand/walk for six hours each in an eight-hour workday; and perform frequent postural movements. (AR 169-184, 187-203.) On reconsideration, a State agency physician reached the same conclusion regarding Plaintiff's physical impairments. After considering Dr. Kopp's latest report, the State agency physician found Plaintiff's affective disorder severe and opined that it resulted in a moderate concentration deficit. (AR 205-223, 225-244.)

**II.     The ALJ's Decision**

At the outset, the ALJ noted that Plaintiff had filed a prior claim for disability: In a decision dated May 22, 2015, another ALJ had found Plaintiff not disabled. (AR 75; *see* AR 145-161.) As the ALJ recognized, a final determination that a claimant is not disabled creates a presumption that the claimant continued to be able to work after that date. *See Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009). While a claimant can rebut this presumption by establishing changed circumstances indicating a greater disability, the ALJ concluded that Plaintiff had failed to do so. (AR 75-76, citing *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).)

As set forth in detail above, the ALJ considered all of the medical evidence as well as the medical opinions. (AR 78-81.) With respect to Plaintiff's physical impairments, the ALJ noted there was no evidence of new injuries, trauma, or

significant changes in Plaintiff's physical health since the prior unfavorable hearing decision. (AR 83-84.) The ALJ stated that Plaintiff was primarily treated with pain medications and underwent various procedures to treat recurrent ganglion cysts on his right hand, used splints to treat finger contracture, and received intermittent occupational/physical therapy for his hands and ankles. Nevertheless, the ALJ found it significant that Plaintiff had not required major orthopedic surgical procedures on his hands, wrists, ankles or back or ongoing pain management treatment. Plaintiff's treating surgeon, Dr. Alnajjar, did not assess Plaintiff as being wholly precluded from using his hands/wrists/fingers, and Plaintiff generally performed well during Dr. Yu's 2018 examination. The ALJ noted that Dr. Yu opined that Plaintiff was able to perform a reduced range of light work and that no treating or examining medical source assessed Plaintiff with more restricted than Dr. Yu had. (AR 84.) Accordingly, the ALJ determined Plaintiff could perform light work with the restrictions set out above – namely, standing/walking up to four hours in an eight-hour workday; frequent handling and fingering and reaching bilaterally; occasional postural activities; no climbing ladders or working at unprotected heights; and required a cane to walk more than four blocks. (AR 85.)

With respect to Plaintiff's mental impairments, the ALJ concluded that the medical record did not demonstrate any significant change or deterioration in Plaintiff's mental health since the prior unfavorable decision. In particular, the ALJ noted that Plaintiff had not required inpatient psychiatric care or intensive outpatient therapy. Instead, Plaintiff's mental health treatment consisted of "intermittent" treatment at the Gateway Homeless services between 2014 and 2017, during which time he "performed well upon mental status testing, particularly after being prescribed various anti-depressant medications." (AR 84.) The ALJ observed that Dr. Kopp's November 2016 assessment was inconsistent with Plaintiff's presentation to Dr. Levin, with Dr. Kopp's own assessment from a few months earlier in which he found Plaintiff capable of performing simple tasks, with Dr. Kopp's 2017

treatment notes revealing Plaintiff's mental status examinations were generally unremarkable, and with the medical record which lacked any referral for more significant mental health treatment or the use of stronger psychiatric medication. (AR 84-85.) Accordingly, the ALJ determined that Plaintiff could perform work involving simple and routine tasks, no more than incidental contact with the public and coworkers, and no more than occasional contact with supervisors. (AR 85-86.)

The ALJ found the opinions of the State agency physicians were consistent with the record and restricted Plaintiff to simple routine tasks. The ALJ gave Plaintiff's allegations of isolation and problems with people "the benefit of the doubt" and incorporated into the RFC additional limitations in interacting with others. (AR 22.)

**III. Analysis**

**A. The ALJ did not commit error at Steps One, Two, or Three of the Sequential Evaluation**

At Step One of the Sequential Evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 22, 2015. (AR 77.) In addition, the ALJ noted that despite having performed past work activity, Plaintiff's earnings had never risen to the level of presumptive substantial gainful activity. (AR 77-78.) Plaintiff does not contend that the ALJ committed error in this regard. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

At Step Two, the ALJ determined that Plaintiff suffered from numerous severe medically determinable impairments: bilateral status post-boxer's fracture; status post-right ankle gunshot wound and open reduction and internal fixation with residual arthritis; obesity; left ankle degenerative arthritis; left hand fourth finger mallet deformity; malunion of the fifth left and fourth right fingers; right hand/wrist ganglion cysts; back arthralgias; and depressive and anxiety disorders. (AR 78.) Plaintiff does not allege that he suffered from an additional severe medically

determinable impairment that the ALJ failed to address. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

At Step Three, the ALJ found that Plaintiff's impairments did not meet or equal any listed impairment. (AR 81.) Plaintiff does not contend that the ALJ erred in this determination. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

### B. The ALJ's RFC determination is supported by substantial evidence

Prior to reaching Step Four of the sequential evaluation process, the ALJ was required to assess Plaintiff's RFC. An RFC is the most a claimant can do despite his or her limitations. *See* 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ need not include properly rejected evidence or subjective complaints. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The Court considers the ALJ's determination in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

As set out above, the ALJ considered all of the medical evidence and determined that Plaintiff retained the ability to perform light work except he would need to use a cane to walk more than four blocks; could stand/walk up to four hours in an eight-hour workday; could occasionally walk on uneven terrain; could not climb ladders or work at unprotected heights; could occasionally perform postural activities; could frequently handle and finger and reach bilaterally; and could perform simple, routine tasks with no more than incidental contact with the public and co-workers and no more than occasional contact with supervisors. (AR 82.) In reaching the determination regarding the functional limitations imposed by Plaintiff's physical impairments, the ALJ considered and essentially adopted the opinion of Dr. Yu, who

performed an orthopedic examination of Plaintiff in January 2018. (AR 79, 762-766.) In assessing the limitations imposed by Plaintiff's mental impairments, the ALJ relied upon the psychiatric evaluation performed by Dr. Levin – although the ALJ imposed additional limitations beyond those opined by Dr. Levin. (AR 80, 692-697.)

The ALJ properly relied upon the opinions of examining physicians, and these opinions constitute substantial evidence supporting the ALJ's RFC determination. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant).

At best, Plaintiff's arguments about his bilateral hand pain and the limitations caused by his ankle impairment amount to a disagreement as to how the evidence should be interpreted. So long as the ALJ's interpretation of the record is rational and supported by substantial evidence, which it is here, the Court may not disturb it. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld"); *see generally Biestek*, 139 S. Ct. at 1154 (observing that in the social security context, the threshold for "substantial evidence" is "not high").

For the foregoing reasons, the ALJ's RFC assessment must be affirmed. *See Bayliss*, 427 F.3d at 1217 ("We will affirm the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence.").

### C. The ALJ did not err at Steps Four or Five of the Sequential Evaluation

At Step Four, the ALJ is required to determine whether Plaintiff's RFC enabled him to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

Here, the ALJ concluded Plaintiff did not have any past relevant work, and Plaintiff does not challenge this finding. (AR 77-78, 86.)

At Step Five, the ALJ considered Plaintiff's age, education, work experience, and RFC in order to determine whether Plaintiff could perform work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). At the hearing, the ALJ asked the VE whether an individual with Plaintiff's vocational profile and RFC could perform work existing in significant numbers in the national economy. The VE testified in the affirmative, and identified representative jobs of assembler, inspector, and sorter. (AR 141-142.) The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. Accordingly, the ALJ's reliance on the VE's testimony was proper. *See Bayliss*, 427 F.3d at 1217-1218 (ALJ properly relied on VE testimony where hypothetical posed to VE contained all limitations the ALJ found credible and supported).

### D. Plaintiff's assertions do not fairly raise any other claim of error

Plaintiff states that he is "still dealing with major pain in both hands," his ankle impairment makes it "hard for [him] to stand and walk to keep [his] balance," and "just normal daily tasks affects me to the highest [sic] exchange." (ECF No. 23 at 4-5.) Even liberally construed, these assertions do not fairly present a claim that the ALJ erred in discounting Plaintiff's testimony. *See, e.g., DeBerry*, 352 F. App'x at 176 (declining to consider claim that ALJ failed properly to apply Social Security Ruling where claimant did not argue the issue "with any specificity" in her opening brief and failed to cite "any evidence or legal authority" in support of her position); *Nazarian*, 2018 WL 2938581, at *4 (plaintiff "provides no specific argument regarding how the ALJ in this case specifically erred in such respect, and thus fails to persuade the Court that a remand is warranted on such conclusory grounds"); *Moody v. Berryhill*, 245 F. Supp. 3d 1028, 1033 (C.D. Ill. 2017) (where plaintiff does

not clearly identify the ALJ's problematic findings or legal support, court "cannot fill the void by crafting arguments and performing the necessary legal research").

The ALJ discussed Plaintiff's subjective complaints (including his allegations of pain and limitations) and rejected them. The ALJ provided several reasons for discounting Plaintiff's credibility, including (a) the absence of significant clinical or diagnostic findings supporting the degree of disability Plaintiff alleged; (b) the inconsistency between Plaintiff's allegations and his statements to Dr. Levin that he had no difficulties getting along with others, making decisions, maintain attention or concentration, following instructions, or completing tasks; (d) the fact that Plaintiff had not experienced any new trauma or injuries since the prior unfavorable decision, nor had he required any significant additional medical procedures apart from some draining/removal of his hand cysts; and (e) the inconsistency between Plaintiff's allegations of disabling symptoms and his ability to perform daily activities including light household chores, care for his personal needs, and use public transportation. (AR 84-85.) Plaintiff has not presented a legitimate challenge to the ALJ's credibility determination, and the Court's review does not suggest that the ALJ erred. *See generally Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (factors ALJ may consider when making credibility determination include lack of objective medical evidence, claimant's treatment history, claimant's daily activities, and inconsistencies in testimony).

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 3/4/2021

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE